UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CASE NO. 5:24-CR-19-KKC-EBA

UNITED STATES OF AMERICA                                               PLAINTIFF

V.        <u>UNITED STATES'S SENTENCING MEMORANDUM</u>

LENNY DEAN NEEDY                                                       DEFENDANT

* * * * *

Pursuant to ¶ 5 of the Court's Sentencing Order (R. 16), the United States submits the following sentencing memorandum as to Defendant Lenny Dean Needy.

*Unresolved PSR Objection*

On July 23, 2024, the United States submitted an objection to the proposed application of the Zero-Point Offender reduction to the United States Probation Office. At the time of this filing, the United States has not received the final PSR, so the objection remains unresolved. Accordingly, the governments submits its briefing on the Zero-Point Offender reduction to the Court:

The United States respectfully objects to the proposed application of the Zero-Point Offender reduction. *See* PSR ¶ 20. The Zero-Point Offender reduction instructs courts to "decrease the offense level determined under Chapters Two and Three by 2 levels" if "the defendant meets all of the" criteria listed in paragraph (a). U.S.S.G.

1

§ 4C1.1(a). Needy does not meet all of the criteria; the disqualifying criterion is § 4C1.1(a)(3).

Specifically, Needy "use[d] . . . credible threats of violence in connection with the offense." § 4C1.1(a)(3). As Needy admitted, he robbed Traditional Bank on August 17, 2023. [R. 14: Plea Agreement at ¶ 3(a).] He "approached the teller window, handed the teller a note, and said words to the effect of, 'This is a robbery, give me everything you have!'" [*Id.*] He commanded the teller "not to hit any buttons and to hurry up with the money." [*Id.*] Needy admitted that he robbed the bank "by intimidation." [*Id.* at ¶ 3(c).]

Witnesses gave color to Needy's conduct. "A witness characterized [Needy] as becoming aggressive after the teller hit the alarm." [*Id.* at ¶ 3(b).] "Another witness said that he did not know what would happen, due to the nature of the crime." [*Id.*] "Another witness said that she was worried [Needy] had a weapon, although she never saw one, but that she was worried he would pull a weapon if they stalled." [*Id.*] "She said she could sense that [Needy] was 'really desperate.'" [*Id.*] "She said that desperate people do stupid things, which made her fearful." [*Id.*]

At the outset, the Zero-Point Offender reduction burdens the defendant with proving its applicability. See § 4C1.1(a) ("*If the defendant meets* all of the following criteria") (emphasis added); *United States v. Celso*, No. 22-CR-194-3(EK), 2024 WL 2319679, at *3 & n.3 (E.D.N.Y. May 22, 2024) (so holding); *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009) ("[T]he defendant bears the burden in seeking sentencing reductions."); *cf. United States v. Reinberg*, 62 F.4th 266, 268 (6th Cir. 2023) (placing burden on defendant to prove entitlement to safety valve relief); *United States v. Trevino*,

2

7 F.4th 414, 431 (6th Cir. 2021) (placing burden on defendant to prove entitlement to acceptance-of-responsibility reduction). The government cannot rebut any of Needy's potential arguments for the reduction until it knows what they may be, and Needy submitted no response to the government's objection to the USPO. Needy, with the burden, has made no argument in favor of the reduction. At worst, if the Court is left in equipoise, the reduction should be removed based on Needy's failure to affirmatively prove its applicability.

Needy accomplished his bank robbery by using credible, albeit implicit, threats of violence. Intimidation—as Needy admitted he used—means "conduct and words calculated to create the impression that any resistance or defiance by the teller would be met by force." *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002). The question is "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *Id.* Needy's admission that he used intimidation to rob the bank necessarily answers the question in the affirmative. Given the "threat of bodily harm from [Needy]'s acts," *id.*, it follows that Needy "use[d] . . . credible threats of violence in connection with the offense." § 4C1.1(a)(3); *see United States v. Henry*, No. 23-cr-125, 2024 WL 2831811, at *2 (E.D. Pa. June 4, 2024) (denying § 4C1.1 reduction when "the elements of Hobbs Act robbery necessitate that Mr. Henry used or threatened violence during the offense"); *United States v. Gibson*, No. 18-CR-30027-SPM, 2024 WL 2155017, at *1 (S.D. Ill. May 14, 2024) (conviction for "interference with commerce by robbery" disqualifies defendant from § 4C1.1 reduction); *cf. United States v. Ziesel*, 38 F.4th 512, 518 n.4 (6th Cir. 2022) ("By definition, robbery occurs when the perpetrator forces

3

compliance through intimidation or threat of violence."). The Sixth Circuit "reject[s] the contention that daylight can be found between 'intimidation' and 'threatened use of physical force' and [holds] that intimidation under the bank robbery statute involves the threat to use physical force." *Wingate v. United States*, 969 F.3d 251, 263 (6th Cir. 2020); *see also United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019) ("We have held that § 2113 bank robbery . . . constitutes a crime of violence under both the Guidelines and under § 924(c)'s elements clause."). It would be incompatible with the Sixth Circuit's holdings that § 2113 bank robbery is a crime of violence to hold that Needy's § 2113(a) violation nevertheless did not involve the use of violence or credible threats of violence.

Context confirms this common-sense conclusion. Needy demanded money during this note-job robbery: he "approached the teller window, handed the teller a note, and said words to the effect of, 'This is a robbery, give me everything you have!'" [R. 14: Plea Agreement at ¶ 3(a).] He commanded the teller "not to hit any buttons and to hurry up with the money." [*Id.*] "Demands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *Gilmore*, 282 F.3d at 402. Thus, apart from the legal significance of Needy's admission that he robbed Traditional Bank by intimidation, the context—his demands for money—likewise "carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *Id.* Needy made at least two such demands: the initial "give me everything you have" demand, and the supplemental "hurry up with the money" demand. Therefore, it, again, follows that Needy "use[d] . . . credible threats of violence in connection with the offense." § 4C1.1(a)(3).

4

Witnesses validate what common sense and the law tell us. One witness "characterized [Needy] as becoming aggressive after the teller hit the alarm." [R. 14: Plea Agreement at ¶ 3(b).] "Another witness said that he did not know what would happen, due to the nature of the crime." [*Id.*] "Another witness said that she was worried [Needy] had a weapon, although she never saw one, but that she was worried he would pull a weapon if they stalled." [*Id.*] "She said she could sense that [Needy] was 'really desperate.'" [*Id.*] "She said that desperate people do stupid things, which made her fearful." [*Id.*] Third-party observations that Needy became aggressive, unpredictable, and desperate during the robbery—with fears that he may be armed—accentuate the threatening nature of Needy's conduct in the uncertain and fraught moments during a bank robbery. It defies the facts, the law, and common sense to say that an aggressive, unpredictable, and desperate Needy, making multiple demands for money and commanding the teller to hurry up, "did not use . . . credible threats of violence" during the commission of this offense. § 4C1.1(a)(3).

It is true that we do not have evidence that Needy was, in fact, armed during the robbery. But that does not matter. "[T]he display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon is not a necessary ingredient of intimidation under § 2113(a)." *Gilmore*, 282 F.3d at 402. Needy's implied 'if you don't give me the money, harm will come to you' threat was credible, even without the overt presence of a weapon. He could have become physically violent with his hands or body. He could have had a weapon concealed on him for purposes of emboldenment. On these facts, it was reasonable for a teller to believe that, if she did not comply with Needy's demands for money, he would carry out the implied threat to inflict harm on and do violence to her.

It is also true that Needy did not explicitly threaten violence. But § 4C1.1(a)(3) carries no explicit threat requirement. It asks, instead, simply whether Needy "use[d] . . . credible threats of violence." § 4C1.1(a)(3). Such language does not "suggest that threats must be explicit." *United States v. Dentmond*, No. 23-1558, 2024 WL 2186324, at *6 (6th Cir. May 15, 2024) (affirming § 2D1.1(b)(2) enhancement when defendant merely told another person "not to speak"); *see, e.g.*, *United States v. Hernandez-Barajas*, 71 F.4th 1104, 1109 (8th Cir. 2023) (Smith, C.J., concurring) (collecting cases supporting "application of § 2D1.1(b)(2) when the threats are *implied* rather than *express*").[1] Indeed, § 2B3.1, the substantive bank robbery guideline, was amended in 1997 to remove a requirement of an "express" threat, suggesting the guidelines are not blind to implicit or implied threats. *See United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002). So, rather than engaging in a black-and-white, explicit-threat analysis, "[c]ontext matters." *Dentmond*, 2024 WL 2186324, at *6. Here, the context shows that Needy used credible— albeit implicit—threats of violence when robbing Traditional Bank. *Id.* (affirming based on "an implicit yet credible threat"); *see Celso*, 2024 WL 2319679, at *3 (holding, in § 4C1.1 context: "A credible threat need not be explicit."); *United States v. Williams*, No. 3:22-cr-8, 2024 WL 765896, at *2 (W.D. Va. Feb. 16, 2024) (denying § 4C1.1 reduction based on an "implicit threat of physical harm"). The § 4C1.1 reduction, accordingly, does not apply.

---

[1] Likely due to § 4C1.1's recent promulgation, there is relatively little case law providing in-depth interpretation of § 4C1.1(a)(3), particularly at the court-of-appeals level. Similar guideline provisions, such as § 2D1.1(b)(2) (providing enhancement if defendant "made a credible threat to use violence"), provide helpful comparative analogs.

6

In sum, the United States respectfully objects to the proposed application of the Zero-Point Offender reduction. The guideline range, at a 19-I, should be 30-37 months.

*Sentencing Analysis Under 18 U.S.C. § 3553(a)*

Applying the factors set forth in 18 U.S.C. § 3553(a), the Court is tasked with imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2). In doing so, the Court "shall consider" the seven § 3553(a) factors. As to Needy, the factors support a sentence within the guideline range.

*The nature and circumstances of the offense.* The Defendant pleaded guilty to one count of bank robbery by intimidation, in violation of 18 U.S.C. § 2113(a). [R. 14: Plea Agreement; R. 1: Indictment.] The nature of the offense is serious; it is a crime of violence. *Jackson*, 918 F.3d at 486. The aggravating circumstances of the offense are covered in detail above. In sum, using intimidation, Needy robbed Traditional Bank of $6,943. He made two explicit demands for money, and he commanded the victim teller to hurry up. Witnesses characterized Needy as aggressive, unpredictable, and desperate. Needy instilled fear in at least one witness due to his actions, and a witness worried he may have been armed. The aggravating nature of the Defendant's conduct calls for a guideline sentence.

*The history and characteristics of the Defendant.* The Defendant's history and characteristics are, overall, unremarkable. To his credit, he has no criminal history, but this is accounted for in the guideline range by his placement in criminal history category I. *See United States v. Boucher*, 937 F.3d 702, 711 (6th Cir. 2019) ("[A]lthough a defendant's criminal record is relevant to determining the applicable criminal history

7

category, . . . it is usually not a proper reason for a variance precisely because the Guidelines already take it into account.).  Until August 2023, he was a weekly, "moderate" marijuana user.  PSR ¶¶ 41-42.  He graduated from Tates Creek High School and the University of Kentucky.  PSR ¶ 43.  He was a travel agent for 23 years and held jobs in the restaurant and hospitality industries.  PSR ¶¶ 44-46.  None of these factors suggest that a guideline sentence is inappropriate.  *Boucher*, 937 F.3d at 711 ("To prioritize a defendant's education, professional success, and standing in the community would give an additional leg up to defendants who are already in a privileged position. . . . Congress and the Guidelines oppose a class-based system where accumulated wealth, education, and status serve as credits against a criminal sentence.").

*The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence.*  Per the above analysis, the Defendant's accurately-calculated guidelines range is 30-37 months.  A sentence within that range will account for the values and purposes expressed in § 3553(a)(2).  The guideline range, defined by the base offense level, Needy's conduct, and Needy's criminal history, and which accounts for his acceptance of responsibility, adequately captures the offense's seriousness.  A guideline sentence will also promote respect for the law, be a just punishment in the circumstances, and adequately deter not just the Defendant from future criminality, but also others in society who may be contemplating robbing banks.

*The guideline sentencing range.*  Per § 3553(a)(4) and the above analysis, the Defendant's properly-calculated sentencing range should be 30-37 months.

8

*The need to avoid unwarranted sentencing disparities.* A guideline sentence will minimize the risk of creating an unwarranted sentencing disparity. *United States v. Houston*, 529 F.3d 743, 754 (6th Cir. 2008). The government "is aware of no factors, either mitigating or aggravating, which would justify a departure from the guideline range." PSR ¶ 64. On the other hand, in a case of this nature, a variance from the range would risk producing an unwarranted sentencing disparity.

Finally, the judgment should provide for the payment of the financial obligations to be imposed against the Defendant. Restitution is mandatory in this case, 18 U.S.C. § 3663A(c)(1)(A)(ii), and the Defendant has agreed to pay restitution in the amount of $6,943. Plea Agreement [DE 14], at ¶ 10; *see also* Preliminary Judgment of Forfeiture [DE 18]. The Defendant has $10,500 in a personal checking account. PSR ¶ 47. This account is at Traditional Bank—the bank he robbed. On July 23, 2024, counsel for Needy informed the United States that "Mr. Needy does agree to the funds in his account being used for restitution and the special assessment," but also expressed that Needy was incarcerated and could not access those funds. To the extent the funds are not paid by the Defendant to the Clerk at sentencing, the Court should include an order in the judgment that the funds not be transferred from the account, so that the United States may garnish the account for the amount of restitution ($6,943), the special assessment ($100), and any fine to be imposed. The Court should consider imposing a fine; the "fine range for this offense is from $10,000 to $95,000, pursuant to U.S.S.G. § 5E1.2(c)(3)." PSR ¶ 58. A bank robbery should cost the robber more than the money he stole, and Needy will have approximately $3,457 sitting in his account after he makes Traditional Bank whole.

9

Accordingly, after considering all the § 3553(a) factors, the Court should impose a sentence within the guideline range as to Defendant Needy and order that the funds in his account at Traditional Bank be held pending garnishment by the United States.

        Respectfully Submitted,

        CARLTON S. SHIER, IV
        UNITED STATES ATTORNEY

By:    s/ James T. Chapman
        Assistant United States Attorney
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4804
        James.Chapman2@usdoj.gov

## CERTIFICATE OF SERVICE

On August 8, 2024, I electronically filed this document through the ECF system, which will send notice of electronic filing to all counsel of record.

        s/ James T. Chapman
        Assistant United States Attorney